**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JOSUE BARCOS BELTRAN

Plaintiff,

-v- 9:26-CV-1526 (AJB)

TODD LYONS *et al.*,

Defendants.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

**DECISION and ORDER**

## I. INTRODUCTION

On August 10, 2026, shortly after being detained by immigration authorities, petitioner filed a verified emergency petition with this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking immediate release (the "petition"). Dkt. No. 1. The petition names the following respondents: Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), Todd Lyons; Acting Field Office Director of the ICE Buffalo Field Office, Philip Rhoney; Acting U.S. Attorney General Todd Blanche, and Secretary of the Department of Homeland Security ("DHS"), Markwayne Mullin. *Id.*

The petition has been fully briefed. Dkt. Nos. 7, 8. For the reasons set forth below, the Court grants petitioner's petition.

## II. BACKGROUND

In December 2022, petitioner Josue Barcos Beltran ("petitioner"), an Ecuadorian national, entered the United States without admission or inspection and was encountered by U.S. Border

Patrol. Dkt. No. 7 at 1; *see also* Dkt. No. 7-1 ("Form I-213"). DHS subsequently released petitioner from immigration custody on parole pursuant to 8 U.S.C. § 1182(d)(5)(A) and placed him on Alternatives to Detention ("ATD"). Dkt. No. 7 at 1; *see also* Dkt. Nos. 7-2, 7-3. His parole was set to expire on February 8, 2023. Dkt. No. 7 at 1. Petitioner later filed an application for asylum and withholding of removal on December 23, 2025. Dkt. No. 1 ¶ 16. At the time of his detention, petitioner was living in Albany with his family. *Id.*

On March 22, 2023, petitioner was arrested by the New York City Police Department and charged with Criminal Sexual Act in the Third Degree, Criminal Mischief in the Third Degree, and Assault in the Third Degree. Dkt. No. 7 at 1–2; *see also* Dkt. No. 7-4. Those charges were subsequently expunged. Dkt. No. 7 at 2. On December 23, 2025, DHS issued petitioner a Notice to Appear charging him as removable. *Id.*; *see also* Dkt. No. 7-5.

On August 10, 2026, petitioner was detained during a traffic stop in Albany. Dkt. No. 1 ¶¶ 1, 15. Petitioner was issued an administrative warrant of arrest and was thereafter transported to ICE's Albany office for processing. Dkt. No. 7 at 2; *see also* Dkt. Nos. 7-6, 7-7. According to the petition, however, petitioner was arrested without a proper warrant and without an individualized determination that he posed a danger to the community or a flight risk. Dkt. No. 1 ¶¶ 42, 53–54, 59.

Respondents have treated petitioner as subject to mandatory detention under 8 U.S.C. § 1225(b)(2), under which he is not eligible for release on bond. Dkt. No. 1 ¶¶ 3, 46. Petitioner contends that his detention instead falls under 8 U.S.C. § 1226(a), which provides for discretionary detention and permits a noncitizen to seek release on bond. *Id.* ¶¶ 21–23, 45–47. Although respondents acknowledge that courts in this District have concluded that § 1226(a) governs under similar circumstances, ICE treated petitioner's August 2026 detention as a return to custody

following the expiration of his parole and therefore did not undertake a changed-circumstances analysis under § 1226(a). Dkt. No. 7 at 3–4.

On the day of his arrest, petitioner filed this petition for a writ of habeas corpus. Dkt. No. 1. Petitioner principally seeks immediate and unconditional release from custody and an order preventing his transfer outside the Northern and Western Districts of New York. *Id.* ¶ 5; *see also* Dkt. No. 6. In the alternative, petitioner seeks an individualized bond hearing at which the Government would bear the burden of establishing by clear and convincing evidence that his continued detention is warranted. Dkt. No. 1 ¶ 41; *see also id.* at 14.

## III. DISCUSSION

### A. Statutory Authority for Petitioner's Detention

Petitioner asserts that his detention is properly governed by 8 U.S.C. § 1226(a), rather than 8 U.S.C. § 1225(b)'s mandatory detention provision, and that his continued detention without a bond hearing violates § 1226(a) and the Due Process Clause. Dkt. No. 1 ¶¶ 40, 49–50.

Section 1226(a) states, in relevant part, that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Under Section 1226(a), detention is discretionary and "the Attorney General . . . may release the alien on bond . . . or conditional parole." *Id.* § 1226(a)(2)(A)–(B).

Conversely, Section 1225(b)(2) provides for mandatory detention during standard removal proceedings. Under § 1225(b)(2), a noncitizen who is determined by an immigration officer to be "not clearly and beyond a doubt" admissible "shall be detained" for a standard removal proceeding. § 1225(b)(2)(A). Importantly, a noncitizen detained under § 1225(b)(1) or § 1225(b)(2) may not be released and is not entitled to a bond hearing. *See, e.g.*, *Lopez Benitez v. Francis*, 795 F. Supp.

3d 475, 484 (S.D.N.Y. 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.")).

As an initial matter, respondents acknowledge that a fair reading of the Second Circuit's recent decision in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), "appears to foreclose" DHS's position that petitioner's detention is properly governed by § 1225. Dkt. No. 7 at 2. In *Barbosa da Cunha*, the Second Circuit held that § 1225(b)(2)(A) did not govern the detention of a noncitizen who was present in the interior of the United States and was not apprehended while entering the country or shortly thereafter. 175 F.4th at 72–78. Rather, the panel concluded that such a noncitizen's detention was governed by § 1226(a). *Id.*

Although petitioner was initially encountered by Border Patrol shortly after entering the United States and thereafter released on parole under § 1182(d)(5)(A), that distinction does not alter the analysis. As the Second Circuit explained in *Barbosa da Cunha*, § 1226(a) applies to noncitizens who are already present in the United States while removal proceedings remain pending, and "once an alien enters the country, the legal circumstance changes, whether their presence here is lawful, unlawful, temporary, or permanent." 175 F.4th at.86 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)) (cleaned up).

Recent decisions in this District have applied *Barbosa da Cunha* to conclude that § 1226(a) applies in materially similar circumstances. *See, e.g.*, *Ampuero v. Venturella*, 2026 WL 1983211, at *2–5 (N.D.N.Y. July 8, 2026); *Torrez Arce v. Blanche*, 2026 WL 1430509, at *2–4 (N.D.N.Y. May 21, 2026); *Vergel Gonzalez v. Rhoney*, 2026 WL 2327690, at *7–9 (N.D.N.Y. Aug. 12, 2026).

Those courts have concluded that a noncitizen who was encountered at the border, subsequently paroled into the United States, and later re-arrested in the interior after living in this country for an extended period is no longer "seeking admission" for purposes of § 1225(b)(2)(A).

Instead, § 1226(a) governs their detention and release. *See Torrez Arce*, 2026 WL 1430509, at *2; *see also Aldaz v. Ice Field Off. Dir.*, 2026 WL 936167, at *3 (N.D.N.Y. Apr. 7, 2026) (noting that "Section 1225(b)(2)(A) authorizes the Government to detain certain aliens seeking admission into the country, while Section 1226(a) authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings.") (internal quotation marks and citations omitted).

The same reasoning applies here. Petitioner entered the United States in December 2022, was encountered by Border Patrol, and was subsequently released from immigration custody on parole Dkt. No. 7 at 1. He thereafter remained at liberty in the United States for more than three and a half years before ICE re-arrested him on August 10, 2026. *Id.* at 1–2. Petitioner's August 2026 arrest was not a continuation of his initial border encounter, but rather "an independent decision to detain [him] after the expiration of his parole." *Ampuero*, 2026 WL 1983211, at *3 (quoting *Ivonin v. Rhoney*, 2026 WL 199283, *4 (W.D.N.Y. Jan. 26, 2026)).

Indeed, respondents themselves recognize that courts in this District have consistently reached that conclusion on similar sets of facts. Dkt. No. 7 at 2–3. Accordingly, because petitioner had been living in the United States several years at the time of his August 2026 arrest, his present detention is governed by § 1226(a), not § 1225(b).

Respondents nevertheless contend that this case differs from *Ampuero* because petitioner's prior release was pursuant to DHS's parole authority under § 1182(d)(5)(A), rather than following a custody determination under § 1226(a). Dkt. No. 7 at 3–4. On that basis, respondents explain, ICE treated Petitioner's August 10 arrest as a return to custody following the expiration of parole and "did not undertake a changed-circumstances analysis under § 1226(a)." *Id.*

But that does not alter the statutory source of petitioner's current detention. *See Torrez Arce*, 2026 WL 1430509, at *1-4 ("The Court therefore concludes that [p]etitioner, who was paroled into the United States approximately two years before his arrest, was not seeking admission when he was arrested, and Section 1225(b)(2)(A) therefore does not apply"). Thus, whatever significance petitioner's prior parole may have for the process constitutionally required before re-detention, it does not place his present detention within § 1225(b). Section 1226(a) governs.

Respondents point out that petitioner was arrested by the New York City Police Department in March 2023 and charged with Criminal Sexual Act in the Third Degree, Criminal Mischief in the Third Degree, and Assault in the Third Degree. Dkt. No. 7 at 1–2; *see also* Dkt. No. 7-4. Although those charges were subsequently expunged, respondents argue that petitioner's arrest constituted a material change in circumstances following his initial release and that reliable evidence concerning the underlying conduct may properly be considered in assessing dangerousness. Dkt. No. 7 at 4.

That intervening arrest distinguishes this case from cases in which the government identified no material change whatsoever following a petitioner's release. But it does not establish that petitioner received the individualized consideration required before his present detention. Respondents expressly acknowledge that the arresting ICE officer did not rely on petitioner's 2023 arrest or the conduct underlying those charges in deciding to take him into custody. *Id.* at 4 n.4 ("[A]ccording to agency counsel, [the arresting] officer does not assert that he used this information in making the arrest. As a result, the Government does not rely upon this information to support that proposition that the arresting ICE ERO officer made an individualized determination based upon these criminal charges."). Instead, ICE treated petitioner as subject to

mandatory detention following the expiration of his parole and therefore did not undertake a changed-circumstances analysis under § 1226(a). *Id.* at 3–4. Thus, whatever bearing petitioner's intervening arrest may have had on an individualized determination of dangerousness, it does not demonstrate that such a determination was actually made before petitioner was re-detained. *Cf. Parra v. Ball*, 2026 WL 1960934, *4 (N.D.N.Y. June 30, 2026) (D'Agostino, J.) ("[Section] 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination.") (quoting *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020)).

Finally, petitioner separately challenges whether his August 10 arrest was effectuated pursuant to a warrant satisfying § 1226(a). Respondents state that petitioner was "issued an administrative warrant of arrest, Form I-200, 'in the field'" after officers removed him from the vehicle to effectuate the arrest. Dkt. No. 7 at 2. That chronology does not establish that the warrant preceded petitioner's seizure. To the contrary, respondents' own description indicates that officers first removed petitioner from the vehicle and effectuated the arrest, and that the I-200 was *then* issued "in the field". *Id.* Respondents have identified no evidence establishing that the warrant existed before petitioner was taken into custody. Accordingly, on the present record, the Court cannot conclude that petitioner was arrested "[o]n a warrant issued by the Attorney General" within the meaning of § 1226(a). *Cf. Vergel Gonzalez*, 2026 WL 2327690, at *9.

**B. Due Process**

Petitioner argues that his detention violates his rights under the Fifth Amendment. "[T]he Fifth Amendment entitles noncitizens to due process of law." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). The Second Circuit has applied the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to determine the adequacy of the process afforded to a noncitizen detained under § 1226(a). *Id.* In *Mathews*, the Supreme Court identified three factors that bear on

the constitutional need for additional procedural protections: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

All three *Mathews* factors cut in petitioner's favor. First, petitioner's liberty interest is substantial. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. *Cf. Hassan v. Bondi*, 2026 WL 891602, at *4 (N.D.N.Y. Apr. 1, 2026) (Sannes, C.J.) (finding that the first *Mathews* factor weighed strongly in petitioner's favor where § 1226(a) required an individualized custody determination, respondents admittedly did not rely on any changed circumstances or individualized assessment of dangerousness or flight risk, and ICE instead treated detention as mandatory under § 1225).

Second, the procedures employed created a substantial risk of erroneous deprivation. Petitioner was released from immigration custody on parole in December 2022 and remained at liberty for more than three years before ICE re-detained him on August 10, 2026. Dkt. No. 7 at 1–2.

Petitioner has been detained since August 10, 2026. "Section 1226(a)'s implementing regulations require an individualized determination as to whether the detention of a noncitizen is appropriate after considering whether the noncitizen (1) is a 'danger to property or persons' and (2) is 'likely to appear for any future proceeding.'" *Parra v. Ball*, 2026 WL 1960934, at *4 (N.D.N.Y. June 30, 2026) (quoting *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 491 (E.D.N.Y. 2025))

(cleaned up). Here, respondents acknowledge that ICE did not make the requisite individualized determination before returning petitioner to custody. Instead, ICE treated petitioner's arrest as a return to custody following expiration of parole and therefore "did not undertake a changed-circumstances analysis under § 1226(a)." Dkt. No. 7 at 3–4.

To be sure, petitioner was arrested by the New York City Police Department in March 2023 and charged with Criminal Sexual Act in the Third Degree, Criminal Mischief in the Third Degree, and Assault in the Third Degree. *Id.* at 4. Those charges were subsequently expunged. *Id.* Respondents contend that "[p]etitioner's intervening arrest on serious criminal charges constitutes information that was not before DHS when it initially released him on parole in December 2022." *Id.* But respondents expressly acknowledge that the arresting ICE officer did not rely on petitioner's 2023 arrest or the conduct underlying those charges in deciding to take him into custody. *Id.* at 4 n.4. Thus, whatever relevance that intervening arrest may have to an individualized custody determination, it does not establish that such a determination was actually made before petitioner was re-detained. Because ICE instead proceeded on the premise that petitioner was subject to mandatory detention under § 1225(b), the procedures employed presented a substantial risk of erroneous deprivation of petitioner's liberty.

Third, although the Government has a substantial interest in enforcing immigration law, ensuring appearance at removal proceedings, and protecting the community, *Zadvydas*, 533 U.S. at 690, "the Government has not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight." *Velasco Lopez*, 978 F.3d at 854. The Government's interest is somewhat more substantial here than in cases where no intervening circumstance arguably bearing on dangerousness existed, because petitioner was arrested on serious criminal charges after his initial release. But respondents acknowledge that ICE did not

rely on petitioner's arrest or the underlying conduct when deciding to detain him. Dkt. No. 7 at 4 & n.4. Nor did ICE otherwise make an individualized assessment of whether petitioner posed a danger to the community or a risk of flight before returning him to custody. *Id.* at 3–4. Accordingly, while petitioner's intervening arrest could have properly been considered in a individualized custody determination, it does not substantially diminish the value of requiring such a determination before depriving petitioner of his liberty.

Balancing the *Mathews* factors, the Court concludes that petitioner was entitled to an individualized determination before being returned to immigration custody. Respondents' failure to provide such process violated petitioner's Fifth Amendment right to due process.

**C. Appropriate Remedy**

"Habeas is at its core a remedy for unlawful executive detention" and "[t]he typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citations omitted). Respondents ask the Court to order a "prompt, individualized bond hearing before an Immigration Judge, not immediate release." Dkt. No. 7 at 3.

After considering the relevant facts and governing law, the Court concludes that a prompt, individualized bond hearing before an Immigration Judge—at which respondents shall have the burden to demonstrate dangerousness or flight risk by clear and convincing evidence—is the appropriate remedy. *Cf. Hassan*, 2026 WL 891602, at *6 (collecting cases). Respondents content that petitioner should bear the burden of establishing that release is warranted. Dkt. No. 7 at 4–5. The Court disagrees. "[I]n the absence of any individualized assessment or identifiable government interest regarding [p]etitioner's initial detention, due process requires that the Government bear the burden of demonstrating dangerousness or flight risk by clear and convincing evidence at any bond hearing." *Hassan*, 2026 WL 891602, at *6; *see also Quintanilla v. Decker*,

2021 WL 707062, at *3 (S.D.N.Y. Feb. 22, 2021) (joining the "overwhelming consensus of judges in this district in concluding that the Government should bear the burden to deny liberty at any Section 1226(a) bond hearing, regardless of the noncitizen's length of detention").

## V. CONCLUSION

Therefore, it is

ORDERED that

1. The Petition for a writ of habeas corpus (Dkt. No. 1) is **GRANTED**;

2. Respondents shall provide petitioner with an individualized bond hearing before an immigration judge within seven calendar days of the date of this decision and order at which the government shall bear the burden to demonstrate, by clear and convincing evidence, that he is a danger to the community or a flight risk. At that bond hearing, the immigration judge must consider non-bond alternatives to detention or, if setting a bond, petitioner's ability to pay. If the respondents fail to provide such a hearing within seven calendar days, they shall immediately release petitioner.

3. Respondents shall certify compliance with this Order by filing a status report by 5:00 p.m. on September 11, 2026

The Clerk of the Court is directed to terminate the pending motions and enter a deadline accordingly.

**IT IS SO ORDERED.**

Dated: September 3, 2026
Utica, New York.

Anthony J. Brindisi
U.S. District Judge